James R. Rowe
The Law Firm of Rowe & Associates
205 W. Randolph, Suite 1430
Chicago, Illinois 60606
(312) 345-1357 tel
(312) 896-0212 fax

*Attorney for Plaintiff*

FILED: JULY 21, 2008
08 cv 4111
JUDGE LEINENWEBER
MAGISTRATE JUDGE ASHMAN
JH

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | |
|---|---|
| EUGENE MILLER, JR.,            )<br>          Plaintiff         )Case No.<br>                               )<br>     v.                        )Judge:<br>                               )<br>AMERICAN CREDIT SYSTEMS INCORPORATED, )Mag. Judge:<br>an Illinois Corporation,       )<br>          Defendant.           ) | |

**COMPLAINT**

Now comes Plaintiff, Eugene Miller, Jr., ("Plaintiff"), through his attorneys, *The Law Firm of Rowe & Associates*, and complains of American Credit Systems, Incorporated, ("Defendant"), as follows:

**JURISDICTION & VENUE**

1) This Court has jurisdiction over the subject matter of this proceeding pursuant to 28 U.S.C. §1331.  Venue is proper in the Northern District of Illinois, Eastern Division pursuant to 28 U.S.C. §1391(a), (b), and (c) in that Defendant conducts regular business within the State of Illinois and within the District, and the transaction that is the basis of Plaintiff's complaint occurred within the District.

**PARTIES**

2) Plaintiff, Eugene Miller, Jr., at all times relevant hereto resided in the Village of Oak Lawn, County of Cook, Illinois.

3) At all times relevant hereto, Defendant, American Credit Systems, Incorporated, was an Illinois corporation with facilities located in, and whose headquarters are located in, Roselle, Illinois, and who is doing business in Cook County, Illinois.

### FACTS COMMON TO ALL COUNTS

4) Defendant is a debt collection agency.

5) A "debt" allegedly owed by Plaintiff to the Village of Oak Lawn Fire Department ("O.L.F.D.") was placed by the O.L.F.D. with the Defendant for collection. The debt was invalid[1].

6) On or about July 18, 2008 at 2:08p.m. an employee and/or agent of the Defendant, namely ("Ed Reynolds"), called the Plaintiff on the Plaintiff's mobile phone in an attempt to collect the invalid debt. ("Phone Call 1").

7) Reynolds left a voicemail for the Plaintiff threatening to file a lawsuit if the payment was not made by a certain date, and advising the Plaintiff to "govern himself accordingly."

8) The Plaintiff returned Reynolds' phone call and explained to Reynolds that the debt was invalid for multiple reasons (see Fn. 1 below), and asked the Defendant's representative to contact its client, the O.L.F.D., to correct the matter.

9) Reynolds refused to investigate the validity of the debt, and instead angrily and threateningly persisted in demanding that the

---

[1] The alleged "debt" owed by Plaintiff was for Plaintiff's use of an O.L.F.D. ambulance; however, since Plaintiff is a resident of Oak Lawn, Illinois and there is no charge for Oak Lawn residents' use of, or transport in, an O.L.F.D. ambulance, the debt was not valid.

COMPLAINT - 2

Plaintiff make payment of the debt. The Plaintiff directed Reynolds to investigate the validity of the debt and ended the phone call.

10) On or about July 18, 2008 at 2:10p.m., Reynolds called Plaintiff again. ("Phone Call #2") Again, Reynolds angrily and threateningly persisted in demanding that the Plaintiff make payment of the debt.

11) During Phone Call #2, Plaintiff attempted to explain to Reynolds that the debt was not valid and that Reynolds needed to investigate the validity of the debt with Defendant's client, the O.L.F.D.

12) Reynolds again refused to investigate the validity of the debt and persisted in yelling and berating the Plaintiff with the intent of intimidating Plaintiff and/or frightening Plaintiff into paying an invalid debt.

13) Plaintiff again attempted to inform Reynolds that the debt was invalid and that Reynolds needed to contact Defendant's client regarding the validity of the debt; however, Reynolds was yelling at Plaintiff throughout the conversation and likely could not hear Plaintiff's explanation. After attempting to advise Reynolds to take such action, Plaintiff ended the phone call.

14) On or about July 18, 2008 at 2:12p.m., Reynolds called Plaintiff again. (Phone Call #3) Again, Reynolds angrily and threateningly persisted in demanding that the Plaintiff make payment of the debt.

15) During Phone Call #3, Plaintiff again attempted to explain to Reynolds that the debt was not valid and that Reynolds needed to investigate the validity of the debt with Defendant's client, the O.L.F.D.

16) Reynolds again refused to investigate the validity of the debt and persisted in yelling and berating the Plaintiff with the intent of intimidating Plaintiff and/or frightening Plaintiff into paying an invalid debt.

17) Plaintiff again attempted to inform Reynolds that the debt was invalid and that Reynolds needed to contact Defendant's client regarding the validity of the debt; however, Reynolds was yelling at Plaintiff throughout the conversation and likely could not hear Plaintiff's explanation. After attempting to advise Reynolds to take such action, Plaintiff advised Reynolds that he would be filing a complaint with a regulatory agency regarding Reynolds' conduct.

18) In response to Plaintiff's statement that he would be filing a complaint with a regulatory agency regarding Reynolds' conduct, Reynolds told the Plaintiff he "didn't care" and the Plaintiff "should file a complaint"; Reynolds thereafter referred to the Plaintiff as a "deadbeat". Reynolds then threatened the Plaintiff that the Defendant "would be filing a lawsuit" against Plaintiff if Plaintiff did not make immediate payment. Plaintiff then ended the call.

19) Following Phone Call #3, Plaintiff called Defendant and asked to speak with a supervisor. The supervisor stated he would investigate Reynolds' conduct and the debt. The supervisor never called the Plaintiff back to inform him of the results of the 'investigation'.

20) Plaintiff thereafter contacted a representative of the O.L.F.D., who apologized to Plaintiff for the conduct of Defendant and indicated that they would correct the situation.

COMPLAINT - 4

21)   At all times relevant hereto, Reynolds was an agent and/or employee of the Defendant acting within the scope of his employment with Defendant.

## COUNT I

## INTENTIONAL VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT

¶(1) – ¶(21)    Plaintiff incorporates by reference ¶(1)-¶(21) of this Complaint as if fully contained herein.

(22) The Fair Debt Collection Practices Act (hereinafter "FDCPA") states, in part, as follows:

> **§ 806 Harassment or abuse**
> A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
> (1) The use or threat of use of violence or other criminal means to harm the physical person, reputation, or property of any person.
> (2) The use of obscene or profane language or language the natural consequence of which is to abuse the hearer or reader.
> (3) The publication of a list of consumers who allegedly refuse to pay debts, except to a consumer reporting agency or to persons meeting the requirements of section 603(f) or 604(3)1 of this Act.
> (4) The advertisement for sale of any debt to coerce payment of the debt.
> **(5) Causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number.**
> (6) Except as provided in section 804, the placement of telephone calls without meaningful disclosure of the caller's identity.

Section 806(5), 15 U.S.C. §1692 (emphasis added)

23) The Fair Debt Collection Practices Act (hereinafter "FDCPA")

further states, in part, as follows:

**§ 808. Unfair practices**
A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

   … (5) The threat to take any action that cannot legally be taken or **that is not intended to be taken**.

Section 808(5), 15 U.S.C. §1692 (emphasis added).

24) The Defendant is a "debt collector" within the meaning of the FDCPA in that (1) the Defendant uses an instrumentality of interstate commerce and/or the mail in its business, the principal purpose of which is the collection of debts; and/or (2) the Defendant regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

25) The Plaintiff is a "consumer" within the meaning of the FDCPA in that the Plaintiff was a natural person allegedly obligated to pay a debt.

26) Phone calls #1, #2 and #3 were "communications" within the meaning of the FDCPA in that said phone calls were a means by which the Defendant directly conveyed information to the Plaintiff regarding a debt allegedly owed by Plaintiff.

27) The funds that Defendant attempted to collect from Plaintiff were a "debt" in that Defendant considered said funds to be an alleged obligation of Plaintiff to pay money arising out of a transaction, namely the use of an ambulance, for personal purposes.

COMPLAINT - 6

28) In violation of the FDCPA, Phone calls #1, #2 and #3 were made by Reynolds, as an agent and/or employee of the Defendant, with the intent to cause Plaintiff's telephone to ring or engage Plaintiff in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass Plaintiff.  This is evidenced by the fact Reynolds made three phone calls to Plaintiff within five (5) minutes, berated and threatened Plaintiff.

29) In violation of the FDCPA, Reynolds threatened Plaintiff that a lawsuit would be filed against Plaintiff, despite the fact that Reynolds had no reason to believe such action would be taken by the Defendant or the O.L.F.D., or that the Defendant or the O.L.F.D. intended to take such action.

30) Section 813 of the FDCPA provides that where a debt collector such as Defendant fails to comply with any section of the FDCPA it is liable to the Plaintiff for statutory damages of up to $1,000.00, plus actual damages, costs, and reasonable attorney's fees.  Section 813, 15 U.S.C. §1692.

31) As a result of Reynolds' actions, Plaintiff suffered anxiety, distress, aggravation and actual damages including the cost of his cellular phone minutes, among others.

**WHEREFORE**, Plaintiff prays that this Court grant him actual, statutory, compensatory and/or punitive damages against Defendant in an amount deemed fair at trial, plus costs, attorney fees, and such further relief that this Court deems just and equitable.

Plaintiff demands trial by jury.

## COUNT II

### NEGLIGENT SUPERVISION

¶(1) - ¶(21)   Plaintiff incorporates by reference ¶(1)-¶(19) of this Complaint as if fully contained herein.

22) Defendant maintains inadequate training and/or supervision practices, policies and procedures to ensure its employees and/or agents, such as Reynolds, are compliant with the requirements of the FDCPA. This is based upon, on information and belief, the practice of Defendant to not record and/or monitor its employees' collection-related phone calls for training and/or discipline purposes. Such information and belief is formed based upon Plaintiff's conversation with Reynolds' Supervisor, in which the Supervisor informed the Plaintiff that they do not record or monitor collection-related phone calls of its employees.

23) Such inadequate training and/or supervision policies, practices and procedures are to be blamed for, and are the cause of, Reynolds' abusive conduct as alleged above. Had Reynolds been properly trained by Defendant, he would not have violated the FDCPA.

24) Such conduct by Defendant rises to the level of "gross negligence" on behalf of the Defendant for failing to properly supervise its employees.

25) As a direct and proximate result of Defendant's failure to maintain adequate supervision and/or training of its employees, Plaintiff was harassed and threatened by one of Defendant's agents and/or employees, namely Reynolds. Reynolds behavior caused

Plaintiff to suffer anxiety, distress, aggravation and actual damages, including the cost of his cellular phone minutes, among others.

**WHEREFORE**, Plaintiff prays that this Court grant him actual, statutory, compensatory and punitive damages against Defendant in an amount deemed fair at trial, plus costs, attorney fees, and such further relief that this Court deems just and equitable. Plaintiff demands trial by jury.

                                                Respectfully Submitted,

                                             _____

                                                      James R. Rowe
                                                 Attorney for Plaintiff

James R. Rowe  
The Law Firm of Rowe & Associates  
205 W. Randolph St., Suite 1430  
Chicago, Illinois 60606  
(312) 345-1357 tel  
(312) 896-0212 fax